FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA 02 AUG -1  AM 10: 35
### SOUTHERN DIVISION

DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| W.E. WASHINGTON, | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV-01-N-1443-S |
| | ] | |
| CSX TRANSPORTATION, INC., | ] | |
| | ] | |
| Defendant(s). | ] | |

**ENTERED**

AUG 0 1 2002

**Memorandum of Opinion**

### I.     Introduction

The court has for consideration the motion for summary adjudication filed by the

defendant, CSX Transportation, Inc.   (Doc. # 32).  By its motion the defendant seeks a

judgment as a matter of law on the claims of plaintiff W.E. Washington, brought pursuant to

the Federal Employers' Liability Act (hereinafter "FELA"), 45 U.S.C. § 51, and the Federal

Safety Appliance Act (hereinafter "FSAA"), 49 U.S.C. § 20302(a)(1)(B).  The issues have been

briefed by the parties and the court finds the matter now ripe for decision.  Upon due

consideration, the court finds the motion due to be and hereby is denied.

### II.     Background

On October 2, 2000 – the day on or about which the incident underlying this lawsuit

occurred – the plaintiff was employed as a foreman at the defendant's Boyles rail yard

facility in Birmingham, Alabama.  When Mr. Washington arrived at the rail yard that morning,

he received orders to assist in the preparation of a "rail train" for the laying of rail within the

limits of the rail yard.  Although the parties dispute what the exact function of such a train



is, the record establishes that the train consists of several flat cars and gondola cars, including CSX flat car number 971846, has its own "maintenance of way" crew that travels with it wherever it goes, and at least lays new rail.

After Mr. Washington received his orders and reviewed them with an engineer, he obtained the assignment of an engine, brought the engine to the rail train, and coupled the engine to the train. Thereafter he charged the brakes of the train, and started walking along the length of the train, releasing hand brakes as he went. According to the parties, a hand brake is released by pulling the top of the brake clockwise to obtain slack on the wheel, thereby causing a counterweight to release and a lock mechanism to drop. These actions result in the release of the brake.[1]

Mr. Washington was in the process of releasing a hand brake mounted on a CSX rail car in preparation to move the train to lay rail when, as a result of an alleged malfunction in the lock mechanism, the brake wheel swung into his hand, grabbed his glove, and banged his hand against an angle iron. Although the parties' perspectives differ to some degree, it appears that the actual injury occurred after the locking mechanism slipped from Mr. Washington's grasp while he was trying to manually cause the hand brake to release.

---

[1] The defendant has also submitted evidence in the form of an instruction manual for releasing hand brakes that varies slightly from the account provided *supra*. According to the manual, one releases a brake in the following manner:

> Using both hands, grasp the brake wheel rim, keeping thumbs on outside. Turn brake wheel clockwise sufficiently to remove tension from pawl [counterweight]. Do not overexert, and NEVER APPLY BRUTE FORCE. Disengage pawl with foot while simultaneously releasing your grip on hand brake wheel. The wheel will spin counterclockwise, so keep your hands, body and clothing clear. If brake staff is not equipped with a pawl, turn brake wheel counterclockwise until brake is fully released.

(Doc. # 35, Ex. 1). Mr. Wolfe also stated that the counterweight is not designed to drop automatically. *Id.*, ¶ 18.

According to Mr. Washington, had the brake mechanism been working properly, he would not have had to manually attempt to cause the hand brake to release. Nevertheless, the event caused Mr. Washington to sustain injuries to his hand.

The state of the brake at the time of the accident is also in some dispute. For example, Mr. Washington submits an inspection report of the car on which the brake was located finding insufficient clearance around the brake wheel. Mr. Washington also testified in his deposition that the brake wheel was warped and bent, bumped up against the angle iron when turned, and had a "wobble" that apparently was the direct culprit for his injuries. The defendant points out that an inspection performed by it on the very day of the accident found the hand brake in good working order with no apparent defect in the brake itself. Moreover, the defendant claims that no prior incidences had been reported involving the hand brake, and that the car was neither "bad ordered" nor taken out of service following the plaintiff's incident. Indeed, the defendant suggests that the accident resulted in part because the weight of the rail housed on the flat cars and the other cars making up the rail train caused the hand brakes on these cars to be a little tighter than on a regular rail car.

### III.    Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also DeJulio v. Georgia*, 276 F.3d 1244, 1248 (11th Cir. 2001). The party asking for summary

3

judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted); *see also Comer v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001); *Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998). The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met this burden, "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *see also Comer, supra*.

The court must grant a motion for summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.*

4

at 249 (citations omitted); *accord Dzikowski v. NASD Regulation, Inc. (In re Scanlon)*, 239 F.3d 1195, 1198 (11th Cir. 2001); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  In rendering its decision, "[a] court 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves*, 530 U.S. at 150); *see also Comer, supra.*

## IV.     Discussion

### A.     Was the train in use?

This court has already noted that Mr. Washington brings this action in part because of an alleged violation of the FSAA, specifically 49 U.S.C. § 20302(a)(1)(B).  The FSAA does not technically provide Mr. Washington his cause of action.  *See Crane v. Cedar Rapids & I. C. Ry. Co.*, 395 U.S. 164, 167 (1969).

> [F]or railroad employees injured because of a FSAA violation, FELA provides the cause of action.  Moreover, a FSAA violation is per se negligence in a FELA suit.  In other words, the injured employee has to show only that the railroad violated the FSAA, and the railroad is strictly liable for any injury resulting from the violation.

*Phillips v. CSX Transportation, Inc.*, 190 F.3d 285, 288 (4th Cir. 1999) (citations omitted); *see also Crane, supra; Wilson v. Union Pac. R. Co.*, 56 F.3d 1226, 1229-30 (10th Cir. 1995); *Lisek v. Norfolk & W. Ry.*, 30 F.3d 823, 826 (7th Cir. 1994) ("'[A] failure of equipment to perform as required by the [FSAA] is in itself an actionable wrong, in no way dependent upon negligence and for the proximate results of which there is liability . . . .'" (quoting *O'Donnell v. Elgin, Joliet & E. Ry. Co.*, 338 U.S. 384, 390 (1949)).  Before seeking relief under FELA for an FSAA violation, however, a plaintiff must satisfy a threshold inquiry.

> [T]he FSAA's requirements apply to only railcars that are actually in use. . . . [T]he purpose of the in use limitation is to give railcar operators the opportunity to inspect for and correct safety appliance defects before the FSAA exposes the operators to strict liability for such defects. Whether a train is in use, for purposes of the FSAA, is a question of law for the court to decide.

*Phillips*, 190 F.3d at 288; *see also Deans v. CSX Transp., Inc.*, 152 F.3d 326, 328-29 (4th Cir. 1998); *Trinidad v. Southern Pac. Transp. Co.*, 949 F.2d 187, 188-89 (5th Cir. 1991); *cf. McGrath v. CONRAIL*, 136 F.3d 838, (1st Cir. 1998) (discussing "in use" language of the Federal Boiler Inspection Act; language identical to that present of the FSAA); *Steer v. Burlington N., Inc.*, 720 F.2d 975, 976-77 (8th Cir. 1983) (same).

The defendant argues that the rail train at issue in this action was not "in use." The defendant notes that Mr. Washington admitted in his deposition that he was "releasing brakes on the train in preparation to move the train to lay rail." Indeed, the rail train had been in the rail yard nearly two full days since its last movement, and was to remain within the yard limits for the sole purpose of laying new rail within the yard. According to the defendant, the pertinent law, as applied to these facts, demands the conclusion that the train was not in use.

Defining the law's applicability is not so simple.

> The [FSAA] applies more broadly than simply to trains en route from their origin to their destination on main line tracks. For example, a transfer train moving on a short connecting track from one train yard to another still must satisfy the FSAA's requirements. Moreover, a train that has reached its destination, but has not yet been turned over to the yard receiving it, is still "in use" under the FSAA. However, the FSAA does not apply to train cars involved in switching operations.[2]

---

[2] Switching operations are "those procedures by which the cars and engines are uncoupled, moved, and reassembled – even though such trains are in motion." *Trinidad*, 949 F.2d at 188-89.

*Phillips*, 190 F.3d at 288-89 (citations and quotations omitted). Some courts "look at 'a number of different factors,' the most important of which are 'where the train was located at the time of the accident and the activity of the injured party.'" *Id.* at 289 (quoting *Deans*, 152 F.3d at 329). Other courts examine whether the train has completed the switching process and has departed for its destination. A train still in the switching process, or one that has yet to be released from inspection, is considered not in use. A train that has completed these procedures and has departed for its destination is in use, "whether or not [it is] actually in motion when the defect occurs." *Trinidad*, 949 F.2d at 188-89.

In the court's view, resolution of the instant case is guided by the Fourth Circuit's decision in *Deans*.[3] There an injured plaintiff (Mr. Deans) – employed by the very defendant made subject of this action – worked as a conductor. On the day he suffered his injury, he had been assigned to take a train from Grafton, West Virginia, to Cumberland, Maryland. Before doing so he had three tasks to complete, among which was to release hand brakes on the railcars. Not unlike the plaintiff in this case, Mr. Deans suffered his injury while releasing one of the hand brakes. He subsequently filed claims under the FSAA and FELA. *See Deans*, 152 F.3d at 328.

In reversing the district court and finding the rail car at issue to be "in use," the circuit court explained:

> [to determine] whether a train is "in use" for purposes of the FSAA, the primary factors we consider are where the train was located at the time of the accident and the activity of the injured party. . . . In this case, although the train had not yet begun moving on the main track, it had already had its engine coupled to it and was standing on a track in the rail yard in

---

[3] The court could locate no Eleventh Circuit case law on point, and has not been offered any by the parties.

> preparation for imminent departure – not in storage or waiting to be moved into a repair location. . . .
>
> Furthermore, Deans, as a conductor, was part of the transportation crew and in no way involved in the repair or maintenance of the train. It was his job to help put the train into motion and, at the time of his injury, he was attempting to release the hand brakes to do exactly that. The fact that the air brake test still needed to be completed, a test that could have been completed prior to the release of the hand brakes, is not in this case dispositive.

*Deans*, 152 F.3d at 329-30 (citations omitted). The court rejected the analysis offered by the Fifth Circuit in *Trinidad* that a train is not in use if it is still in the midst of the switching process or has yet to be released from inspection.

> It is inappropriate to base liability under the FSAA on the mere happenstance of whether an employee chooses to release the hand brakes or conduct an air brake test first, however, and we believe a more consistent and fairer result is reached by looking at a number of different factors, rather than simply at the completion or noncompletion of pre-departure tests.

*See id.* at 329.

The facts of the instant case are strikingly similar. On the day Mr. Washington suffered his injury, he had been assigned to work with the rail train in question laying new rail in the Boyles rail yard. (*See* Doc. # 20, Ex. 1, pp. 108-09). Although the rail train had its own crew, Mr. Washington and a second man were providing assistance to that crew. (*See id.*, pp. 110-11). Mr. Washington had been assigned an engine, and had coupled the engine to the rail train. (*See id.*, pp. 123-24). The performance of these tasks, according to Mr. Washington, was in preparation to move the train to lay rail. (*See id.* at 106-07).

The defendant makes much of this final fact, stating that the train cannot be said to have been "in use" since it was being prepared to lay rail inside the yard. The court disagrees. The train at issue was being prepared for use. It was not under repair, nor was

it being prepared to be moved to a place of repair.   The fact that this train's designated use entailed the performance of functions inside a rail yard as opposed to outside does not render the train and the events that transpired beyond the scope of the FSAA.  "[T]he intent of the statute is to exclude from its coverage only such functions as are necessary to detect and correct those defective conditions for which absolute liability will be imposed." *Angell v. Chesapeake & O. Ry. Co.*, 618 F.2d 260, 262 (4th Cir. 1980).  Furthermore, Mr. Washington – like the plaintiff in *Deans* – was not part of a repair or maintenance crew assigned to the rail train.  His assigned duties included putting the train in motion and then assisting the train and its crew in the laying of rail.

Like the Fourth Circuit in *Deans*, this court finds the rail car at issue in this action was "in use" at the time Mr. Washington suffered his injury.  The court does not believe that the rigid consideration of pre- and post-departure as set forth by the Fifth Circuit in *Trinidad* comports with the purpose of the statute and the extant decisional law.  *Cf. Brady v. Terminal R.R. Ass'n*, 303 U.S. 10, 13-15 (1938); *Holfester v. Long Island R.R. Co.*, 360 F.2d 369, 372-73 (2d Cir. 1966).  Moreover, the court believes that *Trinidad* is inapplicable on its facts.  Although the factual scenario presented there is not entirely apparent from the decision, it appears that the train in that case was not being prepared for an imminent departure.  *See Trinidad*, 949 F.2d at 187.  The same cannot be said here – especially construing the facts in a light most favorable to the plaintiff.  Accordingly, the court finds that the train in this case was "in use" at the time Mr. Washington suffered his injury.

9

### B.      Proof of FSAA violation

As noted *supra*, an FSAA violation is per se negligence in a FELA suit. Thus, for Mr. Washington to survive summary judgment on the issue of liability, he need only show that the defendant railroad violated the FSAA. *See Phillips*, 190 F.3d at 288. Mr. Washington attempts to do so, by showing that defendant railroad violated the regulatory provision governing the minimal amount of clearance required around the rim of a hand brake wheel. *See* 49 C.F.R. § 231.1(a)(4)(i).

The defendant does not dispute the applicability of that provision. Instead, it argues that Mr. Washington cannot assert a violation of this provision because he did not allege the provision in his complaint. As noted *supra*, the plaintiff alleged that the defendant violated 49 U.S.C. § 20302(a)(1)(B). That provision requires, *inter alia*, rail carriers wishing to use a vehicle on its lines to equip the vehicle with "... efficient hand brakes." According to the defendant, the decision to articulate the statute – as opposed to the regulation – as the basis for his relief precludes any reliance upon the regulation now. The defendant cites no legal authority for this proposition, beyond an oblique reference to Rule 8(a) of the Federal Rules of Civil Procedure. The defendant does, however, argue that 49 C.F.R. § 231.1 was not promulgated pursuant to 49 U.S.C. § 20302. Thus, reliance on the regulation is even more inappropriate, as the plaintiff did not even allege the correct statutory source for the regulation he now claims violated. (*See* Doc. # 41, 42).

The court does not believe that the plaintiff has an obligation to plead any regulation at all in his complaint, or if he chooses to plead a regulation, that it be the correct one.[4] As the Supreme Court recently explained in the Title VII context:

> Federal Rule of Civil Procedure 8(a)(2) . . . provides that a complaint must include only a short and plain statement of the claim showing that the pleader is entitled to relief. Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court. . . .
>
> Other provisions of the Federal Rules of Civil Procedure are inextricably linked to Rule 8(a)'s simplified notice pleading standard. Rule 8(e)(1) states that no technical forms of pleading or motions are required, and Rule 8(f) provides that all pleadings shall be so construed as to do substantial justice. Given the Federal Rules' simplified standard for pleading, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.

*Swierkiewicz v. Sorema N.A.*, 122 S. Ct. 992, 998-99 (2002) (citations and quotations omitted). The complaint in the instant case pleaded a violation of the Federal Safety Appliance Act, specifically section 49 U.S.C. § 20302(a)(1)(B). If a party can violate this statute by violating a regulation promulgated thereto, then under the liberal standards of

---

[4] The court is constrained, however, to recall for the benefit of counsel something Abraham Lincoln once wrote to a young man then contemplating the study of law, "In law it is good policy to never plead what you need not, lest you oblige yourself to prove what you can not."

notice pleading described *supra*, a plaintiff pleads sufficiently when the plaintiff alleges a violation of the statute. *Cf. Atchinson, Topeka & Santa Fe Ry. Co. v. Scarlett*, 300 U.S. 471, 474 (1937) ("The regulation having been made by the commission in pursuance of constitutional statutory authority, it has the same force as though prescribed in terms by the statute.").

This conclusion segues into the defendant's second argument: that the regulatory provision cited by the plaintiff was not promulgated pursuant to the statute cited in his complaint. The defendant offers several arguments in support of this notion. First, the defendant notes that the Parallel Table of Authorities and Rules, put forth by the United States Government Printing Office, does not list 49 U.S.C. § 20302 as a parallel code section for 49 C.F.R. part 231. (Doc. # 41, p. 4. n.1; *see also* U.S. Government Printing Office, Parallel  Table  of  Authorities  and  Rules, *available  at* www.access.gpo.gov/nara/cfr/parallel/parallel_table.html).    Second, the defendant contends that the Code of Federal Regulation section upon which the plaintiff seeks to rely lists statutes other than 49 U.S.C. § 20302 as sources of authority. Moreover, part 232 – which includes sections of the Code upon which the plaintiff *does not* rely – does list 49 U.S.C. § 20302 as a source of authority. The defendant specifically notes that Code section 49 C.F.R. § 232.3 (entitled "Applicability") states "that it is enacted pursuant to 49 U.S.C. §§ 20301-20306." (Doc. # 41, p. 5).

Considering this latter contention first, the court notes that the defendant's interpretation of 49 C.F.R. § 232.3 does not exactly correspond to the express language set forth therein. The language is actually part of a subsection, and the reference to 49 U.S.C.

§ 20302 in no way states or implies any import beyond the reach of the subsection itself. *See* 49 C.F.R. § 232.3(d)(6). The defendant is correct that the list of statutes offered at the end of 49 C.F.R. § 231.2 does not include a reference to 49 U.S.C. § 20302. The court does not believe, however, that this fact demonstrates a disconnect between the requirements of 49 C.F.R. § 231.2 and 49 U.S.C. § 20302.

The table of contents for 49 C.F.R. part 231 contains a section labeled AUTHORITY. That section lists the following statutes: 49 U.S.C. §§ 20102-20103, 20107, 20131, *20301-20302*, 201304. The fact that these statutes differ from those provided by the Parallel Table cited by the defendant is of no moment. The AUTHORITY section was amended on January 17, 2001 – a little more than two weeks after the Parallel Table cited by the defendant was revised on January 1, 2001. *See* 66 Fed. Reg. 4104, 4192 (January 17, 2001) ("The authority citation for part 231 is revised to read as follows: Authority: 49 U.S.C. 20102-20103, 20107, 20131, 20301-20303, 21301-21302, 21304; 49 C.F.R. 1.49(c), (m).").

A substantive consideration of the regulations is equally instructive. The Code sections of 49 C.F.R. part 232 – the sections the defendant apparently believes are at play – largely delineate rules and obligations pertinent to power brake systems. Nowhere in this part can the court find specifications for hand brakes comparable – or even contradictory – to those set forth in part 231. Moreover, the language employed by 49 C.F.R. § 231.1(a) mirrors the language of the statute plaintiff includes in his complaint: "One *efficient* handbrake which shall operate in harmony with the power brake installed on the car." 49 C.F.R. § 231.1(a)(1) (emphasis added). That 49 U.S.C. § 20302 gives rise to separate regulatory provisions scattered in different parts of the Code is not at all surprising, given

that the statute itself delineates requirements for different forms of equipment a rail carrier might place on its rail lines: vehicles, locomotives, and trains. *See* 49 U.S.C. § 20302(a)(1), (4), (5). And as one court recently observed, it is the provision affecting trains that includes power brakes specifications. The provision affecting vehicles contains the hand brake specifications. *See Robb v. Burlington N. & Santa Fe Ry. Co.*, 100 F. Supp 2d 867, 869-71 (N.D. Ill. 2000).

In sum, the court finds that the plaintiff is not barred from asserting a violation of 49 C.F.R. § 231.1. Moreover, the court believes that the plaintiff has come forward with sufficient evidence of a violation of this provision to warrant the denial of the defendant's motion for summary judgment.

> "There are two recognized methods of showing the inefficiency of hand brake equipment. Evidence may be adduced to establish some particular defect, or the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner."

*Myers v. Reading Co.*, 331 U.S. 477, 483 (1947) (quoting *Didinger v. Pennsylvania R.R. Co.*, 39 F.2d 798, 799 (6th Cir. 1930)). The inspection report filed after Mr. Washington's injury – in a section entitled "Hand Brakes" – specifically states: "insufficient clearance around brake wheel." (Doc. # 39, Ex. 4). As discussed at length *supra*, 49 C.F.R. § 231.1(a)(4)(i) specifies the amount of clearance required around the rim of a hand brake wheel. If the defendant failed to meet this requirement, the defendant violated the FSAA. The defendant railroad has come forward with affidavit testimony maintaining that the hand brake was not defective and was in proper working condition. None of this testimony, however, addresses the clearance issue discussed in the inspection report, not even the testimony provided by

14

the person who filled out the report, Floyd Maharrey.   (Aff. of Floyd Maharrey).
Accordingly, the court finds that the defendant's motion for summary judgment on the
plaintiff's claim under the FSAA is due to be denied.  This conclusion warrants denial of
summary judgment on the FELA claim as well.

## V.    Conclusion

For the reasons set forth *supra*, the court finds that the motion by defendant CSX for
summary judgment is due to be and hereby **DENIED**.  The court will enter an order in
conformity with this memorandum of opinion.

Done, this ___31st___ of July, 2002.


EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE